## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MARK ELEVELD,

Plaintiff,

v.

ILLINOIS DEPARTMENT OF
CHILDREN AND FAMILY SERVICES
(DCFS) et al.,

Defendants.

Case No. 25-cv-03964

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Mark Eleveld ("Plaintiff") brings this eight-count action against The Illinois Department of Children and Family Services ("DFCS"), Heidi Mueller ("Mueller"), Elizabeth Kimble ("Kimble"), Danielle Gage ("Gage"), the Joliet Township High School District 204 Board of Education (the "Joliet Township Board of Education"), and Dr. Karla Guseman ("Guseman") (collectively, "Defendants") alleging violations of 42 U.S.C. § 1983 ("Section 1983") as well as various state law claims. DCFS, Mueller, Kimble, and Gage (collectively, "DCFS Defendants") and the Joliet Township Board of Education and Guseman (collectively, "Joliet Defendants") bring separate motions to dismiss. [13] [26].

For the reasons stated herein, Joliet Defendants' motion to dismiss [13] is granted and DCFS Defendants' motion to dismiss [26] is granted in part.

### I.   Background

1

The following factual allegations taken from the operative complaint [24] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Plaintiff was a tenured English teacher at Joliet West High School ("JWHS"). [24] ¶¶ 3, 19. On September 17, 2021, a physical incident occurred between Plaintiff and a JWHS student. *Id*. ¶ 11. The incident began when Plaintiff witnessed a verbal altercation between the student and another JWHS teacher. *Id*. ¶¶ 20–23. Plaintiff intervened by asking the student to identify himself. *Id*. ¶ 23. The student refused, addressed Plaintiff with profanities, and tried to walk away from Plaintiff. *Id*. In response, Plaintiff attempted to lead the student into a JWHS classroom while the other JWHS teacher went to get assistance. *Id*. ¶ 25. The student refused to go into the classroom. *Id*. Plaintiff then proceeded to put both arms around the student's waist to pull him inside the classroom. *Id*. Plaintiff, however, lost his footing, causing him to fall backward while still holding the student. *Id*. ¶ 27. Plaintiff landed with his back on the floor, and the student landed on his back on top of Plaintiff. *Id*. As Plaintiff attempted to roll the student over, another JWHS student entered the classroom and intervened. *Id*.

Shortly thereafter, JWHS leadership observed a video of the incident and determined that Plaintiff's actions and use of force were warranted and reasonable under the circumstances. *Id*. ¶ 32. Plaintiff, moreover, was not criminally charged for his actions during the incident. *Id*. ¶¶ 34, 40. Despite this, Guseman—the Superintendent of JWHS—determined that Plaintiff was the initial aggressor during

the incident. *Id*. ¶ 33. On September 27, 2021, with the backing of the Joliet Township Board of Education, Guseman ordered Teresa Gibson, a JWHS Principal, to notify DCFS about the incident. *Id*. ¶¶ 11, 35. 138. DCFS opened an investigation into Plaintiff that same day. *Id*. ¶ 42. Kimble, a DFCS Supervisor, and Gage, a DFCS Investigator, were assigned to investigate the matter. *Id*. ¶¶ 7, 8, 42.

DFCS closed their investigation on January 25, 2022. *Id*. ¶ 42. Based on their review of the matter, DFCS determined that credible evidence supported an indicated finding of child abuse or neglect against Plaintiff. *Id*. ¶¶ 35, 44. Following DCFS' indication, Guseman threatened Plaintiff with public disclosure of the indication and a video of the September 17, 2021 incident if he did not resign from his teaching position at JWHS. *Id*. ¶ 43. Under duress, and in consideration for the welfare of his family, Plaintiff resigned from his teaching position at JWHS on February 18, 2022. *Id*.

Plaintiff eventually appealed DCFS' indicated finding against him. *Id*. ¶ 11. Following an evidentiary hearing on March 1, 2024, the Administrative Law Judge ("ALJ") assigned to the matter concluded that DCFS had not met its burden of proof for its indicated finding against Plaintiff and, on April 19, 2024, recommended to Mueller, the Director of DCFS, that the indicated finding be expunged. *Id*. ¶¶ 5, 11, 12, 47. Mueller concurred with the ALJ and, on that same day, granted Plaintiff's request for expungement of the indicated finding. *Id*. ¶ 48.

On April 11, 2025, Plaintiff filed the instant action against Defendants. [1]. At a high level, Plaintiff alleges that DCFS' investigation against him was unsupported

by facts, without legal justification, and utilized non-existent processes. [1] ¶¶ 70, 91, 104. The Complaint asserts violations of Section 1983 against Gage (Count I), Kimble (Count II), DCFS (Count III), and Guseman (Count IV), willful and wanton negligence by the Joliet Township Board of Education (Count V), willful and wanton negligent supervision by the Joliet Township Board of Education (Count VI) and Kimble (Count VII), and a conspiracy to violate civil rights by Gage, Kimble, and/or Guseman (Count VIII).

On June 13, 2025, Joliet Defendants brought a motion to dismiss Plaintiff's Complaint. [13]. Among other arguments, Joliet Defendants noted that Plaintiff's Complaint improperly named the "Board of Education of Joliet West High School, Illinois School District 204, Joliet, Illinois" as a defendant, as that entity is not capable of being sued under Illinois law. [14] at 2–3.

On June 30, 2025, Plaintiff filed an unopposed motion for leave to file a Corrected Complaint. [22]. The Corrected Complaint addressed the aforementioned entity naming error and did not affect the substance of Plaintiff's claims. *Id.* at 1. On July 1, 2025, this Court granted Plaintiff's motion for leave [23]. Plaintiff promptly filed his Corrected Complaint that same day[1]. [24].

---

[1]Typically, an amended complaint renders a motion to dismiss aimed at an original complaint moot. Applying this concept here, Joliet Defendants' motion to dismiss [13] would be rendered moot by the Corrected Complaint. However, because the allegations in the Corrected Complaint do not substantively differ from Plaintiff's original Complaint [1] and Plaintiff has not argued that Joliet Defendants' motion to dismiss is now moot, the Court construes Joliet Defendants' motion to dismiss [13] as if it was directed against the Corrected Complaint. *Larue v. Mills*, No. 18 C 932, 2019 WL 3195140, at *2 (N.D. Ill. July 15, 2019) (doing the same).

On July 7, 2025, DCFS Defendants brought a motion to dismiss Plaintiff's Corrected Complaint. [26].

## II.  Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is

"a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## III.  Analysis

### A. Incorrect Legal Entity

Joliet Defendants argue that the claims against the "Board of Education of Joliet West High School, Illinois School District 204, Joliet, Illinois" must be dismissed because that entity is incapable of being sued under Illinois law. [14] at 2–3. The Court agrees with Plaintiff that his Corrected Complaint [24], which corrects the entity naming error in his original Complaint [1], moots this argument. [41] at 4–5.

### B. Statute of Limitations

Defendants contend that all counts in the Corrected Complaint are time-barred. [14] at 3–6; [27] at 8–10. "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP,* 559 F.3d 671, 674 (7th Cir. 2009). Nevertheless, if a complaint pleads all the facts needed to establish the defense, dismissal at the pleading stage can be appropriate. *Id*. at 674–675. But "[a]s long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations

based on a more complete factual record." *Sidney Hillman Health Center of Rochester v. Abbott Laboratories, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

The statute of limitations period on Plaintiff's Section 1983 claims (Counts I–IV and VIII) and negligent supervision claim against Kimble (Count VII) is two-years. *Woods v. Illinois Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 766 (7th Cir. 2013); *JP Morgan Chase Bank v. Kowalski,* No. 19-CV-05770, 2020 WL 6487313, at *5 (N.D. Ill. Nov. 4, 2020). The statute of limitations period on Plaintiff's state law claims against the Joliet Township Board of Education (Counts V–VI) is one-year pursuant to Illinois' Local Governmental and Governmental Employees Tort Immunity Act. 745 ILCS 10/8-101 ("No civil action … may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued."); *see also* 745 ILCS 10/1-206 (defining "Local public entity" as including "school district[s]" and "school board[s]."). The statute of limitations period on Plaintiff's claims started to run when Plaintiff knew or should have known of the injury forming the basis of each claim. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992) (Section 1983 claims); *Lesko v. Zuffante*, 165 Ill. App. 3d 823, 117 Ill.Dec. 459, 520 N.E.2d 810, 813 (1987) (state law claims). Plaintiff filed this action on April 11, 2025. [1]. This means Counts I–IV, VII, and VIII are time barred if Plaintiff knew or should have known of the injury from those claims before April 11, 2023, and Counts V–VI are time barred if Plaintiff knew or should have known of the injury from those claims before April 11, 2024.

Defendants contend that all the acts that form the basis of Plaintiff's claims took place between September 17, 2021 and February 18, 2022 and that Plaintiff knew or should have been aware of any violations of his rights as those acts occurred. [14] at 3–6; [27] at 8–10. In response, Plaintiff argues that: (1) his claims did not accrue until April 19, 2024, when the ALJ issued her finding that DCFS had not met its burden of proof and recommended expungement, (2) the continuing violation doctrine makes his claims timely, (3) equitable tolling permits him to avoid the bar of the statute of limitations, and (4) equitable estoppel precludes Defendants from raising statute of limitations issues. [41] at 5–8; [42] at 7–10.

Based on the record before the Court at this stage, it is unclear if Plaintiff knew or should have been aware of any violations of his rights between September 17, 2021 and February 18, 2022. For instance, many of Plaintiff's claims appear to be predicated on testimony and evidence presented during the evidentiary hearing held on March 1, 2024. [24] ¶¶ 50–62, 79–81, 86. Additionally, most, if not all, of Plaintiff's claims seem to require information contained within DCFS' investigative file. *Id.* ¶¶ 77, 81, 85, 89. The investigative file, however, was never provided to Plaintiff before DCFS made its indicated finding against him on January 25, 2022. *Id.* ¶¶ 99–100. In fact, it appears that the first time Plaintiff had access to that file was during the proceedings in front of the ALJ. *Id.* ¶ 81.

Reading the Corrected Complaint in Plaintiff's favor, it is plausible that, given Plaintiff's lack of access to requisite testimony and evidence, Plaintiff was not aware of the violations of his rights until some point after DCFS' investigation closed on

January 25, 2022, and even as late as April 19, 2024, when the ALJ issued her findings. Although Defendants identify serious issues regarding the timeliness of Plaintiff's claims, those concerns are better suited for summary judgment, as the facts alleged in Plaintiff's Corrected Complaint suggest at least a plausible argument against applying the statute of limitations to bar Plaintiff's action. This is enough for now. The Court therefore declines to dismiss the Corrected Complaint as time barred.

### C. Federal Claims

#### i. Counts I & II: Section 1983 Violations By Gage and Kimble Individually

In Counts I and II, Plaintiff asserts that Gage and Kimble, in their individual capacities, are liable under Section 1983 for violating his constitutional rights. [24] ¶¶ 64–118. Both counts allege a hodgepodge of underlying constitutional violations. Count I, for instance, alleges violations of the Fourth, Eighth, Ninth, and Fourteenth Amendments (both procedural and substantive due process). *Id.* ¶¶ 70, 111. Count II similarly alleges violations of the Fourth, Eighth, Ninth, and Fourteenth Amendments. *Id.* ¶¶ 117. DCFS Defendants argue that Counts I and II fail to satisfy the pleading requirements under Rule 8[2] as the Corrected Complaint does not specify the factual allegations that support each of the alleged constitutional violations. The Court agrees.

---

[2]While DCFS Defendants raise these arguments against the Corrected Complaint generally, [27] at 5–7; [44] at 1–2, the Court finds them persuasive as to Counts I and II.

Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). Although Rule 8 reflects a liberal pleading regime, "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled [to] under Rule 8." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC,* 499 F.3d 663, 667 (7th Cir.2007)). Accordingly, "where the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy." *Stanard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2011).

Counts I and II fail to comply with Rule 8. While it is permissible for Plaintiff to bring multiple constitutional claims, the critical issue is that Counts I and II bunch together several constitutional amendments with no explanation as to *how* Gage and Kimble violated each amendment. This type of pleading is improper under Rule 8. *See Kole v. Vill. of Norridge*, 941 F. Supp. 2d 933, 942 (N.D. Ill. 2013) (dismissing a Section 1983 count partially on Rule 8 grounds where the count "lump[ed] together four or five different constitutional amendments with little explanation of how Defendants allegedly violated each amendment."); *Nygren,* 658 F.3d at 800 (criticizing a Section 1983 count that alleged "in a wholly conclusory fashion that the defendants had violated [the plaintiff's] First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights" without specifying the basis for each alleged violation). Although

the alleged constitutional violations may be based on similar events, each constitutional claim naturally has a different focus and will involve, at least in part, proof of different facts. *Kole*, 941 F. Supp. 2d at 942 (noting the same). Without proper notice as to the basis for each constitutional violation, Gage and Kimble cannot properly respond to Plaintiff's allegations against them.

Counts I and II are therefore dismissed, with leave for Plaintiff to amend his Corrected Complaint to comply with Rule 8. Specifically, Plaintiff should separate his various constitutional violations into distinct paragraphs with a short and plain statement as to how Gage and Kimble committed that constitutional violation. Plaintiff shall also clarify which defendant is being sued in each count[3]. Because Counts I and II are dismissed on Rule 8 grounds, the Court declines to address DCFS Defendants' qualified immunity and respondeat superior arguments at this time. It is more appropriate to address those arguments after Plaintiff clarifies the contours of his constitutional claims against Gage and Kimble.

### ii. Count III: Section 1983 Violations By DCFS

In Count III, Plaintiff alleges that DCFS is liable under Section 1983 for violating his Fourteenth Amendment rights. [24] ¶¶ 119–123. DFCS Defendants counter that DFCS is not a "person" within the meaning of Section 1983 and that the Eleventh Amendment bars Count III. [27] at 7–8. DFCS Defendants are correct. Neither a state nor a state agency is a "person" for purposes of Section 1983. *Ryan v. Illinois Dep't of*

---

[3]Count II, for instance, is purportedly against Kimble, but then references Gage's conduct as causing Plaintiff's damages. [24] ¶ 118.

*Child. & Fam. Servs.*, 185 F.3d 751, 758 (7th Cir. 1999). Moreover, the Eleventh Amendment bars suits by private litigants against states or state agencies brought in federal courts. *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994). DFCS is an Illinois state agency; therefore, it is not amenable to suit under Section 1983 and the Eleventh Amendment bars private suits brought against it in federal court. Count III is thus dismissed with prejudice. *C.H. v. Grossman*, No. 14 C 8174, 2015 WL 4554774, at *3 (N.D. Ill. July 28, 2015).

### iii. Count IV: Section 1983 Violations By Guseman Individually

In Count IV, Plaintiff asserts that Guseman, in her individual capacity, is liable under Section 1983 for violating his constitutional rights. [24] ¶¶ 124–135. Count IV alleges underlying constitutional violations of the Fifth, Sixth, and Fourteenth Amendments. *Id*. ¶ 135. Though Count IV appears to suffer from similar hodgepodge issues as Counts I and II, Joliet Defendants were able to make substantive arguments as to why Plaintiff cannot state a claim under any of those constitutional amendments. The Court addresses each argument in turn.

#### 1. Fourth Amendment Violations by Guseman

Count IV does not mention the Fourth Amendment. [24] ¶¶ 124–135. Yet for some reason, Joliet Defendants moved to dismiss a Fourth Amendment Section 1983 claim against Guseman. [14] at 7–9. The Court is confused by this. However, based on a close reading of Joliet Defendants' motion to dismiss, it appears that Joliet Defendants simply made a typographical error: they wrote "Fourth" rather than "Fourteenth." *Id*. Capitalizing on this typographical error, Plaintiff's response brief

newly includes a Fourth Amendment claim against Guseman. [41] at 9. Plaintiff cannot amend his Corrected Complaint with his response brief. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). As such, the Court will not consider Plaintiff's Fourth Amendment Section 1983 argument in its analysis.

### 2. Fifth Amendment Violations by Guseman

The Due Process Clause of the Fifth Amendment guards only against actions by the federal government. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). Guseman is a state, not a federal officer. [24] ¶ 9. Any due process argument based on the Fifth Amendment is thus inapplicable against her. While Plaintiff contends that *West Virginia State Bd of Educ. V. Barnette*, 319 U.S. 624 (1943) and *New Jersey v. T.L.O.*, 469 U.S. 325 (1985) support a different conclusion, neither of those cases involved formal incorporation of the Due Process Clause of the Fifth Amendment against the states. Nor would they: incorporation of the Fifth Amendment's due process rights against the states is unnecessary given that the Fourteenth Amendment has its own Due Process Clause. *Scott v. City of Chicago*, No. 07 C 3684, 2010 WL 1433313, at *4 (N.D. Ill. Apr. 8, 2010). Plaintiff's Section 1983 claim against Guseman for violation of the Fifth Amendment is therefore dismissed with prejudice.

### 3. Sixth Amendment Violations by Guseman

"By its terms, the Sixth Amendment applies only to 'criminal prosecutions.'" *United States v. Carpenter*, 104 F.4th 655, 657 (7th Cir. 2024) (quoting U.S. Const. amend VI). It is undisputed that no criminal prosecution commenced against

Plaintiff, must less any criminal prosecution in which Guseman was involved. [24] ¶ 34. The Sixth Amendment is thus inapplicable against her. While Plaintiff contends that *People v. Curtis*, 219 Ill.App.3d 18, 161 Ill. Dec. 880, 579 N.E.2d 428 (1991) says otherwise, *Curtis* involved a charge of three counts of aggravated criminal sexual assault and a motion to suppress statements made to DCFS. *Id.* at 430–431. That is not the situation here. Plaintiff has not identified any other authority that would support his Sixth Amendment claim. Plaintiff's Section 1983 claim against Guseman for violation of the Sixth Amendment is therefore dismissed with prejudice.

4.   Fourteenth Amendment Violations by Guseman

Plaintiff alleges that Guseman violated his rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment. [24] ¶ 135. The Court starts with the Due Process Clause. A due process claim must be based on a violation of a protected "liberty" or "property" interest. *Smith v. Town of Eaton, Ind.*, 910 F.2d 1469, 1471 (7th Cir. 1990). "Before a party may assert a due process argument— procedural or substantive—it must establish that it has a 'legitimate claim of entitlement' to the right being asserted." *New Burnham Prairie Homes, Inc. v. Vill. of Burnham*, 910 F.2d 1474, 1479 (7th Cir.1990). Here, Plaintiff claims a liberty interest in his reputation, which he alleges was damaged by Guseman's false accusations of child abuse. [24] ¶ 134. Joliet Defendants argue that Plaintiff has not alleged sufficient facts to establish a liberty interest in his reputation. The Court agrees.

In the context of claims premised on damage to reputation, the deprivation of a

14

protected liberty interest is measured by the "occupational liberty" test, otherwise known as the "stigma plus" test. *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010) ("An occupational-liberty claim may arise when, after an adverse employment action, a public employer stigmatizes the employee by making public comments impugning his good name, honor, or reputation or imposes a stigma that forecloses other employment opportunities."). Under this theory, a plaintiff must plead that (1) he was stigmatized by the defendant's conduct: (2) the stigmatizing information was publicly disclosed; and (3) he suffered a "tangible loss of other employment opportunities as a result of the public disclosure." *Id.* As the Seventh Circuit has explained:

> "[M]ere defamation by the government does not deprive a person of liberty protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment. Rather, it is only the alteration of legal status, such as governmental deprivation of a right previously held, which, combined with the injury resulting from the defamation, [that] justifies the invocation of procedural safeguards."

*Mann v. Vogel,* 707 F.3d 872, 877 (7th Cir.2013) (internal quotations and citations omitted).

As Joliet Defendants correctly point out, the critical issue with Plaintiff's occupational liberty claim is that he fails to provide any facts suggesting that Guseman's false accusations against him were publicly disclosed. The public-disclosure element "requires that the defendant actually disseminate the stigmatizing comments in a way that would reach potential future employers or the community at large." *Palka*, 623 F.3d at 454. At most, Guseman disclosed the "unfounded" report of child abuse to DFCS, the Joliet Township Board of Education, and Principal Gibson. [24] ¶¶ 35, 41, 138, 147. But disclosure of stigmatizing

information within "the proper chain of command, or to a related entity that has its own obligation of confidentiality, is not a public disclosure." *Jones v. Lake Cnty. Sheriff's Off.,* 154 F.4th 538, 545 (7th Cir. 2025) (internal quotations and citations omitted). There is no suggestion that DFCS, the Joliet Township Board of Education, or Principal Gibson thereafter publicly disclosed Guseman's report. Illinois law, in fact, generally prohibits such public disclosures. 325 ILCS 5/11 ("All records concerning reports of child abuse and neglect … shall be confidential and shall not be disclosed except as specifically authorized by this Act.").

Without a public disclosure, Plaintiff also cannot plausibly allege that he suffered a "tangible loss of other employment opportunities *as a result of* the public disclosure." *Palka*, 623 F.3d at 454 (emphasis added). Though Plaintiff claims that he suffered "loss of employment opportunities as an educator" because of Guseman's unfounded report, [24] ¶ 135, the facts indicate that it was the publicly accessible indication by DFCS—and not Guseman's initial report to DFCS which prompted DCFS' investigation—that caused any such loss. *Id.* ¶¶ 43, 49, 66, 108–109; *see also Dupuy v. Samuels*, 397 F.3d 493, 510 (7th Cir. 2005) (finding a protectable liberty interest as against DCFS because under Illinois law "DCFS discloses indicated reports to employers whenever an applicant looks for work in the child care field."); *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 617 (7th Cir. 2002) (same). So, while an occupational liberty claim may be plausible against DFCS personnel, it is not against Guseman. Plaintiff's Section 1983 claim against Guseman for violation of the Due Process Clause of the Fourteenth Amendment is therefore dismissed.

Plaintiff additionally alleges that Guseman violated his rights under the Equal Protection Clause of the Fourteenth Amendment. To state an equal protection claim, a Section 1983 plaintiff must allege that a state actor intentionally discriminated against him due to his membership in a protected group. *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir.1994). Plaintiff makes no allegations regarding any intentional discrimination by Guseman, let alone due to Plaintiff's membership in any protected group. Plaintiff's Section 1983 claim against Guseman for violation of the Equal Protection Clause of the Fourteenth Amendment is therefore also dismissed.

In sum, Count IV is dismissed for failure to state a claim against Guseman. Because Count IV is dismissed on these grounds, the Court declines to address Joliet Defendants' qualified immunity and Abused and Neglected Child Reporting Act ("ANCRA") arguments.

### iv. Count VIII: Conspiracy To Violate Civil Rights by Gage, Kimble, and/or Guseman

There is some confusion on Count VIII. On its face, Count VIII alleges that Gage, Kimble, and/or Guseman conspired to violate Plaintiff's civil rights. Simple enough. The issue, however, is that there are several theories to hold a party liable for conspiring to violate a plaintiff's civil rights. 42 U.S.C § 1985(3), for instance, "permit[s] recovery from a private actor who has conspired with state actors." *Turley v. Rednour*, 729 F.3d 645, 649 n.2 (7th Cir. 2013) (quoting *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)). The same is true with the "joint participation doctrine." *See Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 825 (7th Cir.

17

2019) (explaining that the "joint participation doctrine" is a means to subject a private actor to a Section 1983 suit). By contrast, conspiracy liability on a Section 1983 claim exists even without a private actor where a plaintiff shows that "(1) the [defendants] reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). While these theories share similarities, a key distinction between the last and the first two is whether a private actor is being accused of a civil rights violation.

Here, Gage, Kimble, and Guseman are not private actors, and thus it is unclear to the Court why the joint participation doctrine or Section 1985 are necessary. Yet, the Corrected Complaint confusingly cites both. [24] ¶¶ 1, 90, 113, 167. Defendants appear equally as confused as to what theory is being alleged. [27] at 12–13 (responding to 42 U.S.C § 1985 allegations). Plaintiff's response briefing clarifies these issues, explicitly disclaiming claims brought under 42 U.S.C § 1985 and recognizing that the *Beaman* standard applies. [42] at 12. The Court thus analyzes Count VIII under the civil conspiracy framework as set forth in *Beaman*.

In Section 1983 actions, "conspiracy is not an independent basis of liability." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). This means "a showing of a constitutional violation is needed to recover on … a § 1983 claim of conspiracy." *Holm v. Vill. Of Coal City*, 345 Fed. App'x 187, 191 (7th Cir. 2009). As this Court has dismissed the underlying constitutional claims against Gage, Kimble, and Guseman, *supra* §§ III.C.i, III.C.iii, Plaintiff cannot maintain a Section 1983 conspiracy claim against

those defendants. Count VIII is dismissed for this reason alone.

But even if the underlying constitutional claims against Gage, Kimble, and Guseman survived, Count VIII has its own deficiencies that require dismissal. At the pleading stage, a plaintiff alleging a Section 1983 civil conspiracy must provide "factual allegations suggesting that the defendants agreed to violate" his constitutional rights. *Eason v. Raoul*, No. 22-cv-3166, 2023 WL 6174415, at *1 (7th Cir. Sept. 22, 2023). Here, the Corrected Complaint alleges nothing more than bare assertions that Gage, Kimble, an/or Guseman engaged "in a concerted effort" and had "private conversations and meetings" to deprive him of his constitutional rights. [24] ¶ 171. There is no factual support indicating the existence of any agreement between Gage, Kimble, and/or Guseman, much less what specific constitutional deprivation was agreed upon. *Evers v. Reak,* 21 Fed. App'x 447, 450 (7th Cir. 2001) (dismissing a plaintiff's conspiracy claim where "he did not specifically allege the 'what, when, why, and how' of the defendants' supposed agreement to deprive him of his constitutional rights."). Accordingly, Count VIII is dismissed for this reason as well.[4]

### D. State Law Claims

---

[4]Defendants also argue that Count VIII fails under the intra-corporate conspiracy doctrine. According to Defendants, "a conspiracy cannot exist solely between members of the same entity." [27] at 13 (citing *Wright v. Illinois Dept. of Children & Family Services*, 40 F.3d 1492, 1508 (7th Cir. 1994)); [14] at 14. The Seventh Circuit has not addressed the applicability of the intra-corporate conspiracy doctrine to Section 1983 claims. *Smith v. City of Chicago,* 785 F. Supp. 3d 356, 397 (N.D. Ill. 2025). And even if the doctrine applies, it only shields "routine, collaborative business decisions." *Id.* (citation omitted). At this stage, it is unclear whether the alleged improper actions of Defendants constitute "routine ... business decisions" covered by the doctrine. Thus, the Court cannot determine if the intra-corporate conspiracy doctrine is applicable at this time.

### i. Counts V & VI: Willful and Wanton Negligence and Negligent Supervision by the Joliet Township Board of Education

Counts V and VI respectively allege willful and wanton negligence and negligent supervision by the Joliet Township Board of Education. [24] ¶¶ 136–157. In Illinois, "[n]o separate and distinct tort exists for willful and wanton conduct. Rather, willful and wanton conduct is regarded as an aggravated form of negligence." *Doe v. Coe*, 2019 IL 123521, 434 Ill.Dec. 117, 135 N.E.3d 1, 20 (citation omitted). Accordingly, the Court construes Counts V and VI simply as aggravated negligence and negligent supervision claims. *Hamilton v. JPMorgan Chase & Co.*, No. 19 C 5590, 2020 WL 4586109, at *3 (N.D. Ill. Aug. 10, 2020) (doing the same). Aggravated negligence and negligent supervision[5] require the basic elements of a negligence action—duty, breach, and an injury proximately caused from the breach—plus a "deliberate intention to harm" or an "utter indifference to or conscious disregard for the welfare of the plaintiff." *Arbuckle v. Wilcox*, No. 20 CV 1419, 2021 WL 5321552, at *10 (N.D. Ill. Nov. 16, 2021) (quoting *Doe ex rel. Ortega-Piron v. Chicago Bd. of Educ.*, 213 Ill. 2d 19, 289 Ill.Dec. 642, 820 N.E.2d 418, 423 (2004)); *see also Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors*, 2012 IL 112479, 362 Ill.Dec. 484, 973 N.E.2d 880, 887. Joliet Defendants attack the "plus" element, arguing that Plaintiff has not sufficiently plead willful and wanton conduct by the Joliet Township Board of

---

[5]While the Court has not identified any Illinois case law explicitly setting out this principle for negligence supervision, *Coe* suggests that it would equally apply to that tort. 135 N.E.3d at 20.

Education. The Court agrees.

Even in a light most favorable to Plaintiff, the Corrected Complaint does not allege a plausible case of willful and wanton conduct by the Joliet Township Board of Education. Important on this point is that Counts V and VI are *direct* negligence claims against the Joliet Township Board of Education. In direct negligence actions, the principal's conduct is what matters. *Vancura v. Katris*, 238 Ill. 2d 352, 345 Ill.Dec. 485, 939 N.E.2d 328, 343 (2010). So here, the conduct of the seven-member[6] Joliet Township Board of Education is what is germane to the question of willful and wanton conduct. Guseman, although the highest official of JWHS, is not alleged to be a member of the Joliet Township Board of Education.

Aside from the Corrected Complaint's conclusory allegations, [24] ¶¶ 143, 156, Counts V and VI contain no indication that the Joliet Township Board of Education engaged in willful and wanton conduct. While it is plausible that Guseman acted with animosity toward Plaintiff, there are no facts suggesting that any member of the Joliet Township Board of Education acted with a similar sentiment. And despite Plaintiff's claim that the Joliet Township Board of Education should have protected him from Guseman's false charges and physical injury, [24] ¶¶ 136–157, there is no factual basis to infer that the Joliet Township Board of Education acted with "deliberate intention to harm" Plaintiff or "conscious disregard[ed]" Plaintiff's welfare

---

[6]https://www.jths.org/board-of-education/board-of-education-overview. Courts can take "judicial notice of information on official government websites that is not subject to reasonable dispute." *Fryman v. Atlas Fin. Holdings, Inc.*, 2022 WL 1136577, at *7 (N.D. Ill. Apr. 18, 2022) (citation omitted).

when it failed to do so. *Arbuckle*, 2021 WL 5321552, at \*10. At most, the Joliet Township Board of Education's failures were "mere inadvertence, incompetence, or unskillfulness," which does not constitute "willful and wanton conduct." *Carter v. Chi. Police Officers*, 165 F.3d 1071, 1080 (7th Cir.1998) (citing *Moran v. City of Chi.*, 286 Ill.App.3d 746, 222 Ill.Dec. 112, 676 N.E.2d 1316, 1323 (Ill.App.Ct.1997)). In other words, Counts V and VI sound in mere negligence, not willful and wanton behavior. *Barr v. Cunningham*, 2017 IL 120751, 417 Ill.Dec. 667, 89 N.E.3d 315, 319 ("[W]illful and wanton conduct differs from mere negligence in that it requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man.") (cleaned up).

In sum, Plaintiff fails to plausibly allege willful and wanton conduct by the Joliet Township Board of Education, a required element of his willful and wanton negligence (Count V) and negligent supervision (Count VI) claims. Counts V and VI are thus dismissed. Because the Court dismisses Counts V and VI on these grounds, the Court declines to reach Joliet Defendants' Illinois Tort Immunity Act arguments.

### ii. Count VII: Willful and Wanton Negligent Supervision by Kimble

Count VII[7] alleges willful and wanton negligent supervision by Kimble for her

---

[7] DFCS Defendants alternatively ask this Court to decline supplemental jurisdiction over Plaintiff's state law claims. [27] at 14. A district court is given broad discretion in determining whether to retain supplemental jurisdiction over state law claims. *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 728 (7th Cir.1998). As this Court dismisses Plaintiff's federal claims without prejudice, it is possible that

mismanagement of Gage. [24] ¶¶ 158–165. As explained, there is no independent tort in Illinois for "willful and wanton conduct." *Supra* § III.D.i. The Court therefore construes Count VII as an aggravated negligent supervision claim against Kimble. As with Count VI, aggravated negligent supervision requires the basic elements of a negligent supervision claim plus a "deliberate intention to harm" or an "utter indifference to or conscious disregard for the welfare of the plaintiff." *Arbuckle*, 2021 WL 5321552 at *10 (citation omitted).

Unlike Joliet Defendants, DCFS Defendants challenge the causation element of negligent supervision. Specifically, DCFS Defendants argue that because Plaintiff voluntarily left his employment with JWHS in February 2022, any negligent supervision by Kimble could not have "caused" Plaintiff's loss of employment. [27] at 15. While this may be true, Count VII alleges more than just loss of employment as a source of injury. It also states that Plaintiff suffered "pain and suffering, extreme and severe mental anguish and emotional distress, attorneys' fees, expenses, and costs in defending the criminal and administrative charges, and damage to his professional and personal reputation" due to "Kimble's conduct." [24] ¶ 165. It is certainly plausible that any aggravated negligent supervision by Kimble of Gage could have caused such injuries. Count VII thus survives dismissal.

### E. Official Capacities Allegations Against Mueller, Gage, and Kimble

As a final housekeeping matter, the Court turns to the official capacity allegations

---

some federal claims ultimately survive dismissal. As such, the Court will address the substance of the state law claims.

against Mueller, Gage, and Kimble. The Court starts with Mueller. While Mueller is named as a defendant in her official capacity in the Corrected Complaint's caption and introduction, no specific allegations against Mueller are made in any count. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed" with respect to that defendant. *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974). Mueller, therefore, should be dismissed from this action for this reason alone. But a more significant deficiency is present: damages suits against government officials in their official capacities are fundamentally suits against the governmental entity of which the official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Mueller is the Director of DFCS. [24] ¶ 5. Any official capacity suit against Mueller is thus a suit against DFCS itself. Suits against DFCS in federal court are barred by the Eleventh Amendment. *Supra* § III.C.ii. As a result, Mueller must be dismissed from this litigation.

As to Gage and Kimble, while Counts I and II indicate that they are being sued in their individual capacities, the Corrected Complaint's caption states that they are also being sued in their official capacities. [24] at 1. Whether Plaintiff intended this or committed a typographical error is unclear. Regardless, because Gage and Kimble also work for DFCS, [24] ¶¶ 7–8, any official capacity claims against them are similarly barred by the Eleventh Amendment.

## IV. Conclusion

For the stated reasons, Joliet Defendants' motion to dismiss [13] is granted and DCFS Defendants' motion to dismiss [26] is granted in part. Counts I, II, V, VI, and VIII are dismissed without prejudice. Count III is dismissed with prejudice. The claims in Count IV based on the Fifth and Sixth Amendments are dismissed with prejudice. The claims in Count IV based on the Fourteenth Amendment are dismissed without prejudice. Count VII survives. Mueller is dismissed. Any official capacity claims against Gage and Kimble are also dismissed.

The Clerk of the Court is directed to modify the case caption to replace "Board of Education of Joliet West High School, Illinois School District 204, Joliet, Illinois" with "Joliet Township High School District 204 Board of Education."

The Court will allow Plaintiff to file an amended complaint if he can cure the deficiencies as discussed in this order. Plaintiff shall file his amended complaint on or before January 20, 2026.

E N T E R :

Dated: January 5, 2026

_____
MARY M. ROWLAND
United States District Judge